IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
JACKSON DIVISION

| | | |
|---|---|---|
| THOMAS H. DEHUFF, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 3:08cv327TSL-JCS |
| | ) | |
| DIGITAL ALLY, INC. and CHARLES A. ROSS, | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM IN SUPPORT OF**
**DEFENDANTS DIGITAL ALLY, INC. AND CHARLES A. ROSS'S**
**SECOND MOTION FOR SUMMARY JUDGMENT UNDER FED. R. CIV. P. 56**

Marcus M. Wilson, MS Bar #7308
BENNETT LOTTERHOS SULSER & WILSON
One Jackson Place, Suite 1400
188 E. Capitol Drive
Jackson, MS 39205
(601) 944-0466 telephone
(601) 944-0467 telecopier

James F.B. Daniels, MO Bar #30003
A. Jeffrey Misler, MO Bar #37383
McDOWELL RICE SMITH & BUCHANAN
605 W. 47th Street, Suite 350
Kansas City, MO 64112
(816) 753-5400 telephone
(816) 753-9996 telecopier

ATTORNEYS FOR DEFENDANTS

**TABLE OF CONTENTS**

ARGUMENT ....................................................................................................1

I. SINCE DEHUFF IS NOT AND HAS NEVER BEEN A LICENSED "BROKER-DEALER", THE ONLY WAY HE COULD HAVE PARTICIPATED IN THE SALE OF UNREGISTERED DIGITAL STOCK IS AS AN "ASSOCIATED PERSON" OF DIGITAL AS THE "ISSUER" OF THOSE SECURITIES ....................................1

II. IN ORDER FOR DEHUFF TO CLAIM EXEMPT STATUS AS AN "ASSOCIATED PERSON" OF THE ISSUER OF SECURITIES, DEHUFF IS REQUIRED TO BE "PARTNER, OFFICER, DIRECTOR OR EMPLOYEE OF" DIGITAL ....................................5

III. HAVING ENGAGED IN THE BUSINESS OF SELLING UNREGISTERED SECURITIES AS AN UNLICENSED "INDEPENDENT CONTRACTOR", DEHUFF'S CLAIM FOR THE ISSUANCE OF AN ADDITIONAL "150,000 SHARES" OF DIGITAL'S COMMON STOCK AS COMPENSATION FOR HIS EFFORTS IS VOID AND UNENFORCEABLE FOR THE REASON THAT IT IS A CONTRACT "THE PERFORMANCE OF WHICH INVOLVES THE VIOLATION OF" STATE AND FEDERAL SECURITIES LAWS WITHIN THE MEANING OF 15 U.S.C. § 78CC(B) AND MISS. CODE ANN. § 75-1-727 ....................................5

IV. ANY SUGGESTION TO THE CONTRARY NOTWITHSTANDING, § 29(B) OF THE EXCHANGE ACT, 15 U.S.C. § 788CC(B) DOES NOT LIMIT THE CLASS OF PERSONS WHO MAY VOID UNLAWFUL CONTRACTS TO INNOCENT PARTIES, AND NEITHER THE STATUTORY LANGUAGE NOR PRINCIPLES OF EQUITY WILL PERMIT THAT RESULT ....................................8

V. DEHUFF'S CLAIM FOR THE RECOVERY OF AN ADDITIONAL 150,000 SHARES OF DIGITAL STOCK IS A CLAIM FOR ILLEGAL COMPENSATION IN PAYMENT FOR UNLAWFUL SERVICES, PURSUANT TO A "CONTRACT" WHICH THE LAW DECLARES TO BE VOID AND UNENFORCEABLE AND DEHUFF HAS NO FACTS WITH WHICH TO PROVE THAT IT IS NOT ....................................9

# TABLE OF AUTHORITIES

## Cases

Bateman Eichler, et al., Inc. v. Berner, 472 U.S. 299, 306, 105 S.Ct. 2622, 86 L.Ed.2d 215 (1985) ........ 8

Eastside Church of Christ v. National Plan, Inc., 391 F.2d 357, 362 (5th Cir. 1968) ........ 7

Lawrence v. Richman Group Capital Corp., 205 WL 1949864, U. S. D. Ct. D. Conn., Case No. 3:03CV850(JBA) (August 11, 2005) ........ 8

Regional Properties, Inc. v. Financial & Real Estate Consulting Company, 678 F.2d 552, 565 (5th Cir. 1982) ........ 6, 7

SEC v. Deyon, 977 F. Supp. 510, 518 (D. Me 1997) ........ 3

SEC v. Kenton Capital, Ltd., 69 F.Supp.2d 1, 12 (D. D. C. 1998) ........ 4

## Regulations

17 C.F.R. § 240.3 ........ 5

17 C.F.R. 230.501 ........ 1

17 C.F.R. 230.504 ........ 2

17 C.F.R. 230.505 ........ 2

17 C.F.R. 230.506 ........ 2

## Codes

15 U.S.C. § 77 ........ 1, 2

15 U.S.C. Chapter 2B ........ 7

Miss. Code Ann. § 75-1-105 ........ 3

Miss. Code Ann. § 75-71-101 ........ 1

Miss. Code Ann. § 75-71-201 ........ 2

Miss. Code Ann. § 75-71-301 ........ 3, 4

Miss. Code Ann.§ 75-71-401 ........ 1

## ARGUMENT

### I. SINCE DEHUFF IS NOT AND HAS NEVER BEEN A LICENSED "BROKER-DEALER", THE ONLY WAY HE COULD HAVE PARTICIPATED IN THE SALE OF UNREGISTERED DIGITAL STOCK IS AS AN "ASSOCIATED PERSON" OF DIGITAL AS THE "ISSUER" OF THOSE SECURITIES

As § 5 of the Securities Act of 1933, 15 U.S.C. § 77e(a) makes clear, it is unlawful to make use of any means or instrumentality of interstate commerce in connection with the sale of a "security" unless that security is registered or is within one of the exemptions to registration appearing in § 3 of the Securities Act, 15 U.S.C. § 77c. Similarly, the Mississippi Securities Act, Miss. Code Ann. §§ 75-71-101, *et seq*. makes it unlawful for any person to offer or sell any security in the state of Mississippi unless it is duly registered or unless the "transaction" involving the security is otherwise exempted, Miss. Code Ann.§ 75-71-401.

In this case, the "Private Offering Memorandum" which appears in the Appendix as **EXHIBIT 26** leaves no doubt that the Trophy Tech/Digital shares which DeHuff "encouraged" his many Mississippi "investors" to buy were "**not registered under the Securities Act of 1933 … or any state securities laws**". Instead, the Memorandum says that the stock was being "**offered and sold only to 'Accredited Investors' (as defined in Rule 501(a) under the [Securities] Act)**"and thus "**pursuant to an exemption from, or**" in the context of a "**transaction not subject to, … registration requirements**".

Securities and Exchange Commission ("SEC") Rule 501, C.F.R. 230.501 is the first in a series of provisions known as "Regulation D". As such, it is but one of several regulations promulgated under 15 U.S.C. § 77c(b), the effect of which is to add "class[es] of securities to the securities exempted" from registration, *Id*. In the case of Regulation D, the SEC has determined that that it is appropriate to allow "accredited investor(s)", as defined in Rule 501/17 C.F.R.

230.501(a)(5) and (6) to purchase unregistered securities, provided that those sales are conducted in accordance with SEC Rules 504, 505 and/or 506, 17 C.F.R. 230.504, 230.505 and 230.506. As Rules 504, 505 and 506 require, those securities may be offered only by the "**issuer**" of those securities, a term which Rule 501 defines by reference to § 2(a)(4) of the Securities Act, as the "person who issues or proposes to issue [the] security", 15 U.S.C. § 77b(a)(4).

Like federal law, Miss. Code Ann. § 75-71-201 and 75-71-203 list the kinds of securities and the types of "transactions" in securities that are "exempt" from registration, § 75-71-401. Among the exempt "transactions" are the "**sale of securities by an issuer during a period of twelve (12) consecutive months ending with the date of the sale in question to not more than ten (10) persons in**" the state of Mississippi. There are, however, three provisos to that exemption. First, the seller must reasonably believe "**that all the buyers are purchasing for investment purposes only**". Second, "**no commission or remuneration**" may be "**paid or given directly or indirectly for soliciting any prospective buyer**". Third, "**no public advertising or solicitation**" may be "**used in such solicitation or sale**".

Given these provisions of Mississippi as well as federal law, the sale of Digital stock to DeHuff's Mississippi "investors" was or would have been "legal", provided that Digital did no more than sell its own, self-issued shares to those investors. Whether DeHuff's own admitted actions in "finding" these investors, "introducing" these investors, and "encouraging" these investors to buy Digital stock were themselves "legal", however, is a different matter. In fact, there are only two circumstances under which DeHuff's activities in "finding" Mississippi purchasers for Digital's directly issued common stock could be regarded as "legal". **First**, DeHuff's activities in "finding" purchasers for Digital's stock would have been legally permissible, at least *prima facie,* if DeHuff had been a licensed and/or registered "broker-dealer"

or an "associated person" or "agent" of a licensed/registered broker dealer within the meaning of § 15 of the Securities Exchange Act, 15 U.S.C. § 78o(a)(1) and/or Miss. Code Ann. § 75-71-301. **Second**, in the event that DeHuff was <u>not</u> licensed/registered as a "broker-dealer" or an "associated person" or "agent" of a licensed "broker-dealer", his activities in "facilitating" the sale of Digital stock to his "Mississippi investors" would still be/have been lawful if DeHuff could be characterized as an "associated person" of Digital as the exempt "issuer" of the shares, pursuant to SEC Rule 3a4-1, 17 C.F.R. § 240.3a4-1.

Turning to the first of these scenarios, § 3(a)(4) of the Exchange Act, 15 U.S.C. § 78c(a)(4) defines the term "'broker'" as "any person engaged in the business of effecting transactions in securities for the account of others …". In similar fashion, § 3(a)(5) of the Act, 15 U.S.C. § 78c(a)(5) defines a "'dealer'" as "any person engaged in the business of buying and selling securities for his own account …". For its part, Mississippi law defines "'[b]roker-dealer'" as "any person engaged in the business of effecting transactions in securities for the account of others or for his own account" and makes it clear that the term "'[b]roker-dealer' does not include (1) an agent [or] (2) an issuer" among other classes of persons, Miss. Code Ann. § 75-1-105(b).

Given the breadth of these definitions, there can be no genuine issue that having, *inter alia*, "solicited investors by phone and in person" and/or "distributed documents … and prepared and distributed sales circulars in the hope that potential investors would deposit their money" with DeHuff or Digital, DeHuff acted at all relevant times as a "broker" or "broker-dealer", <u>SEC v. Deyon</u>, 977 F. Supp. 510, 518 (D. Me 1997), *affirmed* 201 F.3d 428 (1st Cir. 1998). Second, although the phrase "'[e]ngaged in the business' is not defined by statute", the cases as well as the "SEC No-Action letters interpreting the phrase have indicated that regularity of participation

is the primary indicia of being 'engaged in the business'" of "effecting transactions in securities …", and that "[r]egularity of participation has been demonstrated by such factors as the dollar amount of securities sold" or "the extent to which advertisement and investor solicitation were used", SEC v. Kenton Capital, Ltd., 69 F.Supp.2d 1, 12 (D. D. C. 1998). Here, DeHuff says that he sold more than $1 million in Digital shares to his Mississippi investors. Further, DeHuff admits that even before "Digital" arrived on the scene, he helped locate Mississippi "investors for" an unrelated company known as "ICOP" and was amply rewarded for his efforts. By his own admission, therefore DeHuff was "engaged in the business of effecting transactions and securities for the account of others", 15 U.S.C. § 78c(a)(4).

DeHuff, however, is not and never has been a licensed or registered "broker" or "broker-dealer" in or of securities, whether federally or in Mississippi. Nor is there any proof that DeHuff was under the continuing and direct supervision of a licensed/registered broker/broker-dealer as the definition of "associated person of a broker or dealer" requires, 15 U.S.C. § 78c(18), or that he was an "agent" of a broker-dealer duly registered as such within the meaning of Miss. Code Ann. § 75-71-301.

It is apparent then under what even he must concede to be the uncontroverted facts, that DeHuff was at no relevant time a licensed/registered "broker/broker-dealer" or an "associated person" or "agent" of a licensed/registered "broker/broker-dealer" capable of effecting the lawful sale of unregistered Digital stock to the Mississippi "investors". Accordingly, if his conduct is escape the taint of illegality, whether under the Exchange Act, 15 U.S.C. § 78o or under Mississippi's Uniform Securities Law, Miss. Code Ann. § 75-71-301, he must be able to show that he was an "associated person" of Digital as "issuer".

## II. IN ORDER FOR DEHUFF TO CLAIM EXEMPT STATUS AS AN "ASSOCIATED PERSON" OF THE ISSUER OF SECURITIES, DEHUFF IS REQUIRED TO BE "PARTNER, OFFICER, DIRECTOR OR EMPLOYEE OF" DIGITAL

SEC Rule 3a4-1, 17 C.F.R. § 240.3a4-1 provides that "[a]n associated person of an issuer of securities shall not be deemed to be a broker solely by reason of his participation in the sale of the securities of such issuer" provided, *inter alia*, that the "associated person restricts his participation to transactions involving" the sale of registration-exempt securities and that he or she is not otherwise disqualified from "associated person" status. Unfortunately for DeHuff, Exchange Act Rule 3a4-1(c) is equally clear that in order to be an "associated person of an issuer", that person must be a "**natural person who is a partner, officer, director or employee of … [t]he issuer**"; a "**corporate general partner of a limited partnership that is the issuer**"; a company or partnership that "**controls, is controlled by or is under common control with the issuer**"; or an investment advisor to a registered investment company that is itself "**the issuer**".

Here, DeHuff denies that he was <u>ever</u> a "partner, officer, director or employee of" Digital. On the contrary, his entire Response to Digital's First Summary Judgment Motion is based upon the contention that he was merely an "independent contractor" to Digital; that he was at no time under the supervision or control of Digital; and that his actions were at all times self-directed and independent of Digital or its management. In short, by his own admission, there is no possibility that DeHuff can be characterized as an "associated person" of Digital and in the bargain no possibility of escaping the conclusion that in "finding investors" for Digital and in facilitating the sale to those investors of Digital stock, DeHuff acted as nothing more nor less than an unlicensed securities broker/broker-dealer.

## III. HAVING ENGAGED IN THE BUSINESS OF SELLING UNREGISTERED SECURITIES AS AN UNLICENSED "INDEPENDENT CONTRACTOR", DEHUFF'S CLAIM FOR THE ISSUANCE OF AN ADDITIONAL "150,000

**SHARES" OF DIGITAL'S COMMON STOCK AS COMPENSATION FOR HIS EFFORTS IS VOID AND UNENFORCEABLE FOR THE REASON THAT IT IS A CONTRACT "THE PERFORMANCE OF WHICH INVOLVES THE VIOLATION OF" STATE AND FEDERAL SECURITIES LAWS WITHIN THE MEANING OF 15 U.S.C. § 78CC(B) AND MISS. CODE ANN. § 75-1-727**

Section 29 of the Exchange Act, 15 U.S.C. § 78cc(b) provides, in relevant part, that "**[e]very contract made in violation of any provision of**" the Exchange Act "**or of any rule or regulation thereunder, and every contract … the performance of which involves the violation of, or the continuance of any relationship or practice in violation of, any provision of**" the Securities Act "**shall be void** … **as regards to the rights of any person who, in violation of any such provision, rule or regulation, shall have made or engaged in the performance of any such contract …**". To the same effect, Miss. Code Ann. § 75-71-727 states that "**[n]o person who has made or engaged in the performance of any contract in violation of any provision of**" Title 75, Chapter 71 of the Mississippi Code "**or any rule or order**" thereunder "**may base any suit on the contract**".

The Fifth Circuit has left no doubt that given the prohibition of § 29(b), an "unregistered broker" like DeHuff simply cannot "enforce an executory contract engaging him to sell securities using interstate facilities" and the fact that "the unregistered broker has performed his part of the contract should not alter that result", <u>Regional Properties, Inc. v. Financial & Real Estate Consulting Company</u>, 678 F.2d 552, 565 (5th Cir. 1982). As <u>Regional Properties</u> declares, even if the contract is "merely voidable, the party who has dealt with the law-breaker can elect that remedy under", Exchange Act, Section 29(b), 15 U.S.C. § 78cc(b), *Id*. Were "this not the result there would be no civil remedy for the failure to register" since, if a "broker" like DeHuff who has performed can recover his commission despite non-registration, then the prohibition is a toothless tiger", *Id*.

It is apparent, likewise, that Digital need not "establish" that it suffered tangible "harm" as a result of DeHuff's "failure to register" in order to assert § 29(b), Eastside Church of Christ v. National Plan, Inc., 391 F.2d 357, 362 (5th Cir. 1968). Section 29(b) of the Exchange Act "requires only that" the person asserting its provisions "be in the class of persons whose interest the Act was designed to protect", *Id*. In the Fifth Circuit's "view", a more stringent requirement would be contrary to the express mandate of § 29(b), and the fact that "Congress removed certain violations from the voiding section of § 29(b) lends support to [that] construction …", *Id*. The "requirement that brokers and dealers register is of the utmost importance in effecting the purposes of the" Exchange Act, *Id*. It "is through the registration requirement that some discipline may be exercised over those who engage in the securities business and by which necessary standards may be established with respect to training, experience and records", *Id*., standards which, it clearly appears, were never attained by DeHuff.

Finally, it is of no consequence that DeHuff's unlawful claim for illegal compensation arises in the context of what he characterizes as a "settlement agreement". The text of § 29(b) is clear: "**[e]very contract made in violation of any provision of**" 15 U.S.C. Chapter 2B necessarily including the broker-dealer registration requirements of 15 U.S.C. § 78o(a) and "**every contract … the performance of which involves the violation of**" Chapter 2B "**shall be void**". Even DeHuff cannot deny that a contract, the purpose of which was to compensate him for selling securities which, in fact, it was illegal for him to sell, is "made in violation" and/or "involves the violation of" the registration requirements of 15 U.S.C. § 78o(a). As the Fifth Circuit has held, "[s]ection 29(b) of the Exchange Act"/15 U.S.C. § 78cc(b) "does not render void only those contracts that 'by their terms' violate the Act", Regional Properties v. Financial

& Real Estate Consulting, 678 F.2d at 559, but rather reaches any and every contract "made in violation of the Act" or "which involves a violation".

## IV. ANY SUGGESTION TO THE CONTRARY NOTWITHSTANDING, § 29(b) OF THE EXCHANGE ACT, 15 U.S.C. § 78cc(b) DOES NOT LIMIT THE CLASS OF PERSONS WHO MAY VOID UNLAWFUL CONTRACTS TO INNOCENT PARTIES, AND NEITHER THE STATUTORY LANGUAGE NOR PRINCIPLES OF EQUITY WILL PERMIT THAT RESULT

No doubt DeHuff will tell this Court that having "engaged him to sell securities" which as an unregistered broker/dealer he could not lawfully sell, and then agreed to pay him commissions on those sales which, under Miss. Code Ann. § 75-71-203(9) he could not legally receive, Digital is "just as guilty" as he is and in no position to raise the statutory prohibition of § 29(b) as a defense. The Court can ignore that argument. Section 29(b), 15 U.S.C. § 78cc(b) "does not by its terms limit the class of persons who may void" such a "contract to innocent parties", Lawrence v. Richman Group Capital Corp., 205 WL 1949864, U. S. D. Ct. D. Conn., Case No. 3:03CV850 (JBA) (August 11, 2005). Neither "the statutory language nor principles of equity require such a result", *Id*.

Beyond that, it is axiomatic that "'[i]n a case of equal or mutual fault … the position of the [defending] party … is the better one'", Bateman Eichler, et al., Inc. v. Berner, 472 U.S. 299, 306, 105 S.Ct. 2622, 86 L.Ed.2d 215 (1985), quoting from *Blacks Law Dictionary*, p. 711 (5th ed. 1979). The reason lies in the fact that "courts should not lend their good offices to mediating disputes among wrongdoers", *Id*. and "if both parties are *in pari delicto*, the law will leave them where it finds them", Lawrence v. Richman Group, 2005 WL 1949864 *2. The "place" where the parties will be "left" is "outside the protection of law, so far as that protection consists in aiding them to enforce such contracts" and in this way "the public secures the benefit of a rigid

adherence to the law", Bateman Eichler, 472 U.S. at 307, *quoting from* McMullen v. Hoffman, 174 U.S. 639, 669-70, 19 S. Ct. 839, 43 L.Ed. 1117 (1899).

## V. DEHUFF'S CLAIM FOR THE RECOVERY OF AN ADDITIONAL 150,000 SHARES OF DIGITAL STOCK IS A CLAIM FOR ILLEGAL COMPENSATION IN PAYMENT FOR UNLAWFUL SERVICES, PURSUANT TO A "CONTRACT" WHICH THE LAW DECLARES TO BE VOID AND UNENFORCEABLE AND DEHUFF HAS NO FACTS WITH WHICH TO PROVE THAT IT IS NOT

Like most myths, DeHuff's explanation as to why he should receive an additional 150,000 shares of Digital stock when he has already received 735,000 shares as illegal compensation for unlawful services, tends to vary with telling and/or retelling. In his First Amended Petition, DeHuff insisted that he was owed 150,000, indeed 156,667 shares of Digital stock for his "good and valuable services" in "raising capital" for Digital. Confronted now, by the specter of § 29(b) of the Exchange Act, DeHuff has scrambled to transform his claim into a claim for stock for which he has subscribed or "paid-in" but never received. DeHuff's problem with that assertion, however, is three-fold. First, when pressed at deposition, DeHuff admitted that the first 50,000 of that 150,000 share total was indeed a claim for commissions which he says he was owed but which he never received. Similarly, DeHuff admitted that the only justification he had for claiming the second 50,000 of that 150,000 share total was that Andy Ross had "agreed" to it. As for the final 50,000 shares of the 150,000 share total, the best DeHuff can do is to suggest that there were "some intangible things such as" the fact that DeHuff "provided just about all the money to start the company up" by "raising the capital" to justify his claim**.**

Second, DeHuff cannot extract from the maze of confusion that are his financial records, sufficient evidence to show that other than the $12,500 that he paid Digital for the 50,000 shares acquired and received by his IRA, he never paid Andy Ross any money or gave Andy Ross

anything of value which by a fair preponderance of credible evidence, was in exchange for Digital stock. Given DeHuff's admissions that as a result of "prior business dealings", he owed Andy Ross at least $20,000 during this same period; his confusion as to whether monies which he paid to Andy Ross were in satisfaction of that indebtedness or given for some other purpose, and his admission that upon the sale of his substantial holdings of ICOP stock, he would have been required to "split" at least some of the proceeds of some of that stock with Andy Ross, DeHuff can never show that any monies which he paid to Andy Ross were indeed in purchase of Digital stock.

Finally, even if DeHuff were able to prove that he had indeed given discreet and identifiable sums to Andy Ross in purchase of Digital stock, he cannot prove that those funds were ever paid to or received by Digital itself. On the single occasion on which DeHuff and his IRA paid for and indisputably acquired Digital stock, the check which DeHuff transmitted in payment identified Digital Ally, not Andy Ross, as the payee. That is the single check of its kind. Even assuming, generously, that DeHuff were able to prove that he gave monies to Andy Ross and that these monies were, by preponderating evidence, intended for the purchase of Digital stock, he cannot show that the monies themselves were ever paid to Digital or that the stock which he was supposed to receive was treasury stock to be issued by Digital as opposed to Andy Ross' personal holdings. That is the state of the proofs now, and there is nothing DeHuff can do to change them.

Respectfully submitted,

MCDOWELL, RICE, SMITH, & BUCHANAN

*/s/ James F.B. Daniels*
James F.B. Daniels, MO Bar No. 30003
A. Jeffrey Misler, MO Bar No. 37383
605 W. 47th Street, Suite 350
Kansas City, MO 64112
Telephone: (816) 753-5400
Facsimile: (816) 753-9996
jdaniels@mcdowellrice.com
jmisler@mcdowellrice.com

Marcus M. Wilson, MS Bar # 7308
BENNETT LOTTERHOS SULSER & WILSON
One Jackson Place, Suite 1400
188 East Capitol Street
Jackson, MS 39205
Telephone: (601) 944-0466
Facsimile: (601) 944-0467
mwilson@blswlaw.com

ATTORNEYS FOR DEFENDANTS

## CERTIFICATE OF SERVICE

I hereby certify that a true and accurate copy of the foregoing was filed this 19th day of June, 2009 with the Clerk of the Court using the CM/ECF system which will send a Notice of Electronic Filing to those persons requesting electronic notification and by U.S. mail, postage prepaid to the following:

B. Clint Gardner
THE GARDNER GROUP, P.A.
P.O. Box 1163
Brookhaven, MS 39601-1163

*/s/ James F.B. Daniels*

.