UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
JACKSON DIVISION


THOMAS H. DEHUFF                                              PLAINTIFF


VS.                                       CIVIL ACTION NO. 3:08CV327TSL-JCS


DIGITAL ALLY, INC. AND
CHARLES A. ROSS                                              DEFENDANTS


MEMORANDUM OPINION AND ORDER

This cause is before the court on the motion of defendant Digital Ally, Inc. for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. Plaintiff Thomas H. DeHuff has responded to the motion and the court, having considered the memoranda of authorities, together with attachments, submitted by the parties, concludes that the motion should be denied.

Plaintiff Thomas DeHuff brought this action against Digital Ally (Digital) and its president and chief executive officer Andy Ross for breach of contract. In his complaint, DeHuff alleges that, prior to April 1, 2005, Digital, through Ross, engaged him as a consultant to assist in locating investors for Digital and agreed to pay him a ten percent commission on all monies raised by DeHuff.[1] According to DeHuff, as of April 1, 2005, Digital was in

---

[1] Digital, which was founded by defendant Ross, is in the business of developing, manufacturing and selling digital recording devices and related equipment, primarily for law enforcement agencies, the military and private security organizations.

breach of its agreement to pay his ten percent commission, and on April 8, 2005, he and Andy Ross, on behalf of Digital, entered into a settlement agreement, under the terms of which he agreed to forego his claims against Digital and Ross in exchange for their agreement to issue him 150,000 shares of Digital stock.  Plaintiff alleges that defendants breached that agreement, which prompted him to file the present action.

Previously in this cause, defendants moved for summary judgment on a number of bases, including that plaintiff's claims, which are in effect for the recovery of compensation for his service to Digital, are barred by the one-year statute of limitations applicable to actions on unwritten contracts of employment, as set forth in Mississippi Code Annotated § 15-1-29; alternatively, that plaintiff's claims are barred since defendants' alleged breaches of contracts on which the settlement was grounded, i.e., the claims that plaintiff allegedly agreed to settle, are time-barred by the applicable limitations period, Miss. Code Ann. § 15-1-49; that the statute of frauds precludes enforcement of the alleged settlement agreement since it was to be performed over a period of three years, see Miss. Code Ann. § 15-3-1(e) (writing evidence agreement required for "upon any agreement which is not to be performed within the space of fifteen months from the making thereof..."); and that there was no meeting of the minds sufficient to form a contract.  By memorandum opinion

and order dated March 12, 2009, this court denied defendants' first motion for summary judgment, finding there were genuine issues of material fact regarding the nature of plaintiff's relationship with Digital, and in particular, as to whether he was an employee or independent contractor, and also regarding whether there was a meeting of the minds to support the alleged agreement. The court further concluded that enforcement of the alleged agreement is not barred by the statute of frauds, as the agreement could have been performed within fifteen months.

Defendants have now moved for summary judgment on the basis that the alleged agreement which DeHuff seeks to enforce is void under section 29(b) of the Securities Exchange Act, 15 U.S.C. 78cc(b), since its performance involved a violation of federal securities laws.[2] For the reasons that follow, the court concludes that defendants' motion should be denied.

---

[2] In its opinion denying defendants' first summary judgment motion, the court noted that defendants had asserted in their rebuttal an argument that they had not previously advanced as a basis for summary judgment, namely, that since Dehuff is not and was never a licensed "broker" or "broker dealer," he could not have lawfully participated in the sale of Digital Ally's unregistered securities other than as an "associated person" of Dehuff, and that in order to be an "associated person," Dehuff must have been a "partner, officer, director or employee" of Digital Ally, which DeHuff maintained he was not. The court declined to consider this argument, as it was raised for the first time in defendants' rebuttal. Defendants have now asserted this and related arguments in support of their present summary judgment motion.

3

In support of their motion, defendants argue that, in his dealings with potential investors on behalf of Digital, DeHuff acted as a broker, yet he was not registered as a broker with the Securities and Exchange Commission (SEC). Defendants thus maintain that DeHuff violated Section 15(a)(1) of the Securities Exchange Act, 15 U.S.C. § 78o(a)(1), which makes it unlawful for a "broker" to make use of any means of interstate commerce "to effect any transactions in, or to induce or attempt to induce the purchase or sale of, any security" without registering as a broker with the SEC. 15 U.S.C. § 78o(a)(1).[3] Defendants contend, therefore, that the putative agreement by which Digital agreed to compensate plaintiff for his efforts on behalf of Digital in "effecting" securities transactions is void by virtue of Section

---

[3] Section 15(a)(1) provides, in pertinent part,
No broker or dealer (other than one whose business is exclusively intrastate) shall make use of the mails or of any means or instrumentality of interstate commerce to effect any transaction in, or to induce the purchase or sale of, any security ... otherwise than on a national securities exchange, unless such broker or dealer is registered in accordance with subsection (b) of this section.

Defendants note that even if he was not registered as a broker, plaintiff's activities as a "broker" would have been lawful if he was an "associated person" or "agent" of a registered broker within the meaning of § 15 of the Securities Exchange Act, 15 U.S.C. § 78o(1)(1), or pursuant to SEC Rule 3a4-1, 17 C.F.R. § 240.3a4-1 if he was an "associated person" of Digital, the issuer of the shares. Defendants argue that neither of those exceptions to the registration requirement apply here, and in response, plaintiff does not contend otherwise.

4

29(b) of the Securities Exchange Act.[4] That statute provides, in pertinent part, that

> [e]very contract made in violation of any provision of this chapter or of any rule or regulation thereunder, and every contract ... the performance of which involves the violation of, or the continuance of any relationship or practice in violation of, any provision of this chapter or any rule or regulation thereunder, shall be void (1) as regards the rights of any person who, in violation of any such provision, rule, or regulation, shall have made or engaged in the performance of any such contract....

15 U.S.C.A. § 78cc. In order to avoid a contract under section 29(b), a party must show that "(1) the contract involved a 'prohibited transaction,' (2) he is in contractual privity with the defendant, and (3) he is 'in the class of persons the Act was designed to protect.'" Regional Properties, Inc. v. Financial and Real Estate Consulting Co., 678 F.2d 552, 559 (5th Cir. 1982) (citations omitted).

DeHuff does not take issue with defendants' ability to establish the second or third requirements. The requirement of privity is satisfied, as plaintiff and defendants were the only parties to the subject agreement. In addition, Digital, as issuer of the stock, is in the class of persons the statute was designed

---

[4] Defendants' answer recites as follows:
Any and all claims plaintiff may have are barred by applicable federal and state securities laws and public policy.
Plaintiff is not licensed as a broker/dealer under applicable state or federal securities laws and cannot lawfully receive compensation for the sale of securities.

5

to protect. See id. at 558 (issuer obviously in class of persons the Act was designed to protect) (citing Eastside Church of Christ v. National Plan, Inc., 391 F.2d 357 (5th Cir.), cert. denied, 393 U.S. 913, 89 S. Ct. 234, 240, 21 L. Ed. 2d 198 (1968)). DeHuff takes the position, though, that Section 29(a) cannot be used to void the April 8, 2005 settlement agreement because the agreement does not involve a "prohibited transaction." Clearly, an agreement to compensate an unregistered broker for effecting securities transactions would involve a prohibited transaction. See, e.g., Salamon v. Teleplus Enters., Inc., Civ. No. 05-2058, 2008 WL 2277094 (D.N.J. June 2, 2008) (consulting agreement by which issuer hired alleged "broker" to raise funds for payment of ten percent finder's fee involved a prohibited transaction where broker was not registered). Thus, DeHuff presumably would agree that if he were seeking herein to recover for Digital's alleged breach of the original agreement to pay him a ten percent commission for all investment funds which he generated, then that agreement would have been voidable under Section 29(b) if he had indeed been a broker. However, DeHuff argues that in order for Section 29(b) to apply, defendants are required to establish "a direct relationship between the violation at issue and the performance of the contract, i.e., the violation must be 'inseparable from the performance of the contract' rather than 'collateral or tangential to the contract,'" id. (citing Berckeley

6

Inv. Group, Ltd. v. Colkitt, 455 F.3d 195, 205 (3d Cir. 2006)), which he submits is not the case since the "settlement agreement" does not involve the "sale" of "securities" to third parties but rather is a tangential agreement that can be performed without violation of securities laws. The court rejects DeHuff's position on this point. The alleged settlement agreement between the parties, no less than the original agreement between them, was intended to compensate DeHuff, an alleged unregistered "broker," for his alleged illegal services, and as such, the agreement falls into the category of contracts involving "prohibited transactions," if, in fact, DeHuff was a "broker."

DeHuff next argues, alternatively, that summary judgment must be denied because there exist genuine issues of material fact as to whether he was acting as a "broker," as alleged by defendants, and thus required to register with the SEC, or whether he was instead acting merely as a "finder," who was not required to register. The Securities Exchange Act defines "broker" as one who "engaged in the business of effecting transactions in securities for the account of others." 15 U.S.C. § 78c(a)(4)(A). While the statute does not elaborate on what it means to "effect transactions" or to be "engaged in the business," courts have identified a number of factors for determining whether a person qualifies as a broker for purposes of Section 15(a)(1), "including '"regular participation in securities transactions, employment

with the issuer of the securities, payment by commission as opposed to salary, history of selling the securities of other issuers, involvement in advice to investors and active recruitment of investors."'" U.S. S.E.C. v. Bravata, No. 09-12950, 2009 WL 2245649, 2-3 (E.D. Mich. July 27, 2009) (quoting S.E.C. v. George, 426 F.3d 786, 797 (6th Cir. 2005)). See also S.E.C. v. Martino, 255 F. Supp. 2d 268, 283 (S.D.N.Y. 2003) (listing as the relevant factors (1) whether an employee is the issuer; (2) whether he is reimbursed on a commission-basis rather than a salary; (3) whether he is selling or previously has sold the securities of other issuers; (4) whether he is involved in the negotiations between the issuer and the investor; (5) whether he opines on the merits of the investment or gives advice; and (6) whether he is an active finder of investors); Cornhusker Energy Lexington, LLC v. Prospect Street Ventures, No. 8:04CV586, 2006 WL 2620985, 6 (D. Neb. Sept. 12, 2006) (observing that "(t)ransaction-based compensation, or commissions are one of the hallmarks of being a broker-dealer.").

These courts recognize that the term "effecting securities" is interpreted broadly, so that a person effects transactions in securities if he or she participates in such transactions "at key points in the chain of distribution". Cornhusker, 2006 WL 2620985, at 6 (citing Massachusetts Fin. Servs. Inc., v. Securities Investor Prot. Corp., 411 F. Supp 411, 415 (D. Mass.), aff'd, 545 F.2d 754 (1st Cir. 1976)). Regarding the meaning of

8

"engaged in the business," "[c]ases and SEC No-Action letters interpreting the phrase have indicated that regularity of participation is the primary indicia of being 'engaged in the business.'" S.E.C. v. Kenton Capital, Ltd., 69 F. Supp. 2d 1, 12-13 (D.D.C. 1998) (citations omitted). See also Salamon, 2008 WL 2277094, at 8 ("In determining whether a particular individual or entity falls within this definition, courts consider whether the individual may be characterized by a certain regularity of participation in securities transactions at key points in the chain of distribution.") (internal quotations omitted). "Regularity of participation has been demonstrated by such factors as the dollar amount of securities sold ... and the extent to which advertisement and investor solicitation were used." Id.

There are, however, "certain limited circumstances [in which] a person or entity"-a "finder"--may perform a narrow scope of activities without triggering broker/dealer registration requirements." Cornhusker, 2006 WL 2620985, at 6 (citing Mike Bantuveris, 1975 SEC No-act. LEXIS 2158 (Oct. 23, 1975) (referring to "merely act[ing] as a finder in bringing together the parties to transactions involving the purchase and sale of securities")). "A finder, however, will be performing the functions of a broker-dealer, triggering registration requirements, if activities include: analyzing the financial needs of an issuer, recommending or designing financing methods, involvement in negotiations,

9

discussion of details of securities transactions, making investment recommendations, and prior involvement in the sale of securities." Id. (citations omitted). "The distinction drawn between the broker and the finder or middleman is that the latter 'bring[s] the parties together with no involvement on [his] part in negotiating the price or any of the other terms of the transaction.'" Salamon, 2008 WL 2277094, at 13 (citing M. Dean Kaufman, Inc. v. Am. Machine & Foundry Co., 102 N.J. Super. 1, 10, 245 A.2d 202, 206 (App. Div. 1968)).

In the case at bar, defendants argue that the undisputed facts of record establish beyond reasonable challenge that DeHuff functioned as a broker. They note that DeHuff was engaged for the specific purpose of finding investors for Digital and that toward that end, he identified and contacted potential investors and introduced these investors to Andy Ross. In addition, he attended meetings in which shares of Digital stock were promoted and marketed by Andy Ross; and, he suggested to potential investors that Digital stock was "something they should look at." By DeHuff's account, for his efforts, he was able to generate around $1 million in investments for Digital, for which he was to be paid on a commission basis. And, defendants note, DeHuff had previously been engaged in a similar capacity to promote the sale of securities for another company started by Andy Ross, ICOP Digital. Defendants maintain that these facts establish beyond

10

any meaningful dispute that DeHuff fits squarely within the definition of a person engaged in the business of effecting the sale of securities. DeHuff, on the other hand, submits that there are genuine issues of material fact on the issue of whether his primary role was that of a finder rather than a broker.

DeHuff does not dispute any of the specific facts cited by defendants in support of their motion, but he insists that the record evidence, viewed objectively, tends to show that his role was limited to finding prospects and introducing them to Andy Ross, who marketed the stock and negotiated the transactions. Having considered the record evidence and the parties' arguments, the court tends to agree with DeHuff that his level of participation is properly an issue for trial. It follows, therefore, that defendants' motion for summary judgment will be denied.[5]

---

[5] DeHuff has contended that even if he were found to be a broker, the doctrines of *in pari delicto* and/or equitable estoppel should apply to foreclose defendants' avoiding the parties' alleged settlement agreement since defendants knew that DeHuff was not a registered broker and wrongfully led him to believe that his participation in the subject transactions did not require that he be registered as a broker. For their part, defendants have argued in response that *in pari delicto* and equitable estoppel are equitable *defenses* only, which have no applicability where, as here, defendants have raised Section 29(b) solely as an affirmative defense and not as a basis for a claim for rescission and restitution. Because the court concludes there is a genuine issue of material fact on the question whether DeHuff functioned as a broker, the court need not consider or determine whether the equitable doctrines invoked by DeHuff in response to defendants' assertion of their Section 29(b) "affirmative defense," are available in the context presented, which is an issue vigorously contested by the parties.

11

Accordingly, it is ordered that defendants' motion for summary judgment is denied.

SO ORDERED this 11th day of December 2009.

/s/ Tom S. Lee
UNITED STATES DISTRICT JUDGE